821 So.2d 590 (2002)
Anthony JACKSON, Plaintiff-Appellant
v.
SEARS AUTHORIZED RETAIL DEALER STORE, et al., Defendants-Appellees.
No. 36,166-CA.
Court of Appeal of Louisiana, Second Circuit.
June 12, 2002.
*591 Bruscato, Tramontana & Wolleson, Monroe, By: Anthony J. Bruscato, Catherine Leary, Avondale, for Appellant.
Davenport, Files & Kelly, L.L.P., By: W. David Hammett, Monroe, for Appellees.
Before PEATROSS, KOSTELKA and DREW, JJ.
KOSTELKA, J.
In this personal injury action, Anthony Jackson ("Jackson") appeals the summary judgment granted in favor of Kenthel, Inc., a corporation doing business as Sears Authorized Retail Dealer Store ("Sears"), and its insurer, United Fire and Casualty Company ("United"). We affirm.

FACTS
On February 9, 2000, Jackson and his mother, Carolyn Smith ("Smith"), shopped for a washing machine and dryer at the Ruston, Louisiana Sears store, owned and operated by Thelma and Kenneth Brewster. On his way out of the store, Jackson stopped to look at a group of cloth fold-up chairs intended for use in leisure activities. As he did so, Thelma Brewster assisted him. The store sold different designs of the chair. While the store's supply of the type of chair that Jackson desired to purchase was contained in boxes, one chair of a different design had been placed on display. The chair had three legs and foot and head rests and could be folded up and placed in an accompanying bag. When Jackson sat on the edge of the chair, it tipped over causing him to fall to the floor and injure himself. As a result, Jackson instituted suit against Sears and United.
On October 12, 2001, Sears sought a motion for summary judgment arguing that because it was a non-manufacturing seller, it had no responsibility to Jackson *592 for any defects in the product without proof that it knew or should have known of the defect and failed to disclose it. Moreover, Sears urged that it had no duty to instruct Jackson on how to sit in a chair. After hearing arguments and reviewing the material submitted in support of and in opposition to the motion, the trial court granted summary judgment in favor of Sears concluding that as a matter of law, Sears owed no duty to Jackson. This appeal ensued.

DISCUSSION
Appellate courts review summary judgments de novo under the same criteria which govern the district courts' consideration of whether summary judgment is appropriate. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342 (La.1991); Steier v. Heller, 31,733 (La. App.2d Cir.05/05/99), 732 So.2d 787. The law governing the summary judgment procedure is set forth in La. C.C.P. art. 966. As amended in 1996, Article 966 provides that the summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by Article 969. La. C.C.P. art. 966(A)(2); Steier, supra; Traweek v. Jackson, 30,248 (La.App.2d Cir.02/25/98), 709 So.2d 867. The motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
As again amended in 1997, Article 966 now provides that when the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, he is not required to negate all essential elements of the opposing party's claim, action, or defense. Rather, once the mover points out that there is an absence of factual support for one or more elements essential to the opposing party's claim, action, or defense, and the opposing party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact and summary judgment shall be granted. La. C.C.P. art. 966(C)(2); Steier, supra. Further, La. C.C.P. art. 967 provides that the opposing party cannot rest on the mere allegations or denials of his pleadings but must present evidence which will establish that material facts are at issue. Id. Ultimately, however, the burden of proof remains with the mover who must meet the initial burden of making a prima facie showing of entitlement to summary judgment. See, Mark Tatum and Judge William Norris, III, Summary Judgment and Partial Judgment in Louisiana: The State We're In, 59 La. L.Rev. 131, 141 (1998).
The question of whether a duty exists is a question of law which may be resolved by summary judgment when it is clear that no duty exists and the credibility of witnesses is not in dispute. Gullette v. Caldwell Parish Policy Jury, 33,440 (La. App.2d Cir.06/21/00), 765 So.2d 464.
After de novo review of the case, we agree with the trial court's determination that Sears is entitled to summary judgment as a matter of law.
The deposition testimony of Jackson's expert in structural engineering, John Maroney ("Maroney"), submitted in opposition to the motion for summary judgment, is persuasive in our determination.[1] Therein, Maroney stated his belief that the cause of the accident was Jackson's sitting in the chair in a "vulnerable *593 position" which caused it to turn over. Maroney described the chair's propensity to lean forward when weight is applied to the front edge as a "defect in the chair..." that "they did not take ... into consideration when they designed the chair...." Maroney felt this was "probably a design defect in the chair...." and offered alternate design suggestions including shortening the cloth seat of the chair to eliminate its tendency to tip frontward. Maroney stated he did not think the chair's collapse was caused by incorrect assembly.[2]
Jackson contends that this testimony shows the cause of the accident to have been the chair's "inherent instability" which qualifies as a hazardous condition under either the merchant liability provisions of La. R.S. 9:2800.6(A)[3] or La. C.C. arts. 2315 and 2317, for which Sears had the duty to inspect, detect, warn of or remedy prior to displaying the chair. We find this argument specious, at best. Regardless of Jackson's obvious attempts at semantics and his protestations to the contrary, in the final analysis, Jackson's claim can be viewed in no way other than a Louisiana Products Liability Act claim, i.e., a claim for damages resulting from a possible design defect in the chair.[4] La. R.S. 9:2800.53, et seq.
Of course, the law is clear that a non-manufacturing seller of a defective product is not responsible for damages in tort absent a showing that he knew or should have known the product was defective and failed to declare it. Slaid v. Evergreen Indem., Ltd., 32-363 (La. App.2d Cir.10/27/99), 745 So.2d 793 and cases cited therein. Nor is a non-manufacturing seller required to inspect the product prior to sale to determine the possibility of inherent vices or defects. Id.
Under these legal standards, it is obvious that, as a matter of law, Sears, as a non-manufacturing seller, had no duty to inspect or test the product for the type of inherent design vices or defects alleged in this case. The imposition of such a duty would effectively make the non-manufacturing seller a guarantor against defects over which it had no control or responsibility. The light of reason illuminates the unduly onerous burden such a duty would inflict upon retailers.
Moreover, Jackson would be required to show that Sears knew or should have known of the possible defect in the chair in order to satisfy his evidentiary burden of proof that a duty to disclose the defect existed. Relevant to this issue of knowledge, the depositions of Thelma and Kenneth Brewster established that Sears operated as a retailer of the items which were shipped to the store by truck and that the store had previously sold the *594 chair, possibly more than two dozen of them, without apparent incident. In opposition to the summary judgment motion, Jackson presented no evidence to contradict this testimony or that otherwise demonstrated Sears knew or should have known of the potential design defect. Indeed, in his deposition, Maroney "assume[d] that [sales people] did not know that the chair would do what it did...." Moreover, because Jackson conceded at oral argument that no remaining genuine issue of material fact exists, it is evident that at trial of this matter, no further factual evidence regarding the issue of Sears' knowledge of the possible defect would be submitted. Without proof of this aspect of his claim, we must conclude that, as a matter of law, Jackson will be unable to satisfy his evidentiary burden of showing that Sears owed him a duty to disclose the alleged defect or have its employees inspect or test the chair for this type of design flaw. Accordingly, we affirm the judgment of the trial court at Jackson's cost.
AFFIRMED.
NOTES
[1] Of course, it is proper to consider the deposition testimony of an expert witness submitted in opposition to the summary judgment. See, Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.02/29/00), 755 So.2d 226.
[2] Although Jackson mentions as a possible cause of the accident incorrect assembly by store employees, he nowhere argues this theory in brief and in fact relies on Maroney's testimony which suggested that improper assembly was not the cause of the accident. He also concedes that the chair was not broken.
[3] Jackson likens the facts of this case to falling merchandise cases and contends that the burden of proof applied in those type of cases should apply here. See, Davis v. Wal-Mart Stores, Inc., XXXX-XXXX (La.11/28/00), 774 So.2d 84.
[4] On this basis, we also distinguish this case from the facts of Pear v. Labiche's, Inc., 301 So.2d 336 (La.1974), cited by Jackson in support of his claim that the collapsing chair is a hazardous condition for which Sears owed a duty to inspect and eliminate prior to displaying the chair under the general negligence provisions of La. C.C. arts. 2315 and 2317. Pear involved a chair that collapsed as the result of a worn rivet, not a design defect.